The third case for argument is Darren Rick v. Jodi Harpstead. Ms. LeJuan, take your time, and when you're prepared, please proceed. Ms. LeJuan Thank you. May it please the Court, Counsel? Your Honors, my name is Brittany LeJuan, and I'm a Senior Assistant Hennepin County Attorney appearing on behalf of Appellant Jodi Harpstead, the Commissioner of the Department of Human Services. Neither the United States nor this Court has ever held that a freestanding actual innocence claim can be the sole basis for habeas relief. Affirming the District Court in this matter would do just that. Not only did the District Court err by extending the actual innocence exception to civil commitment, essentially molding a Federal criminal concept onto a civil action. In doing so, the Federal District Court also improperly reweighed the evidence and substituted its own judgment for that of the State District Court. To justify its conclusion that Rick met his high burden that alleged improprieties in the State civil commitment proceeding were so egregious to factually — excuse me, fatally infect the proceedings and render his entire trial fundamentally unfair, the Court ignored Minnesota case law that is extremely applicable as to whether he would have been civilly committed. The Minnesota legislature has properly established a process for civil commitment of an individual who is sexually dangerous personality or sexual dangerous personality or sexual psychopathic personality, which is — A factual question? You don't have annual reviews in Minnesota? Minnesota does not have annual rules. However, an individual is permitted to apply for a special review board hearing every six months. I believe Missouri does have required annual reviews. Yes. Minnesota allows the individual every six months they can petition for a special review board. Now, I don't think it's every six months. I think it's every six months after they make the decision, correct? So you've got to go through the process and then it's six months. Correct, Your Honor. That — my apologies on that. It is every six months after the process. And I admit that there is a backlog with the process for special and annual hearings. But the process is still in place. And this is an end run of that process. Is it, though? And here's where I think it's difficult. There's a different standard. We're only one of only three States, I think, if that's still the case, where showing that you would not have been eligible for initial civil commitment is not a way to get out. In other words, the standard is completely different than what it would be for the initial civil commitment. So from my point of view, it's kind of a different process that does a different thing. Am I wrong about that? It's true, Your Honor, that you can't challenge the underlying civil commitment when you're going through the special review board process. However, you can challenge it when you do an appeal from the civil commitment itself. And if there is a situation in which someone has established that he or she is no longer in need of treatment, they would be eligible for relief. So I don't think that it should be a bar requiring that the actual innocence gateway comes open. This would open the floodgates if every single individual who's been civilly committed says, actually, there's new actuarial data two years from now. What about four years from now? It's always going to be changing. It's evolving science in that sense. But this isn't the same watershed threshold as DNA, as arson, as the shaken baby cases. This is different. And this has to do with predictability. So this Court's decision in Carstens is extremely helpful talking about the limitations of it, but also the fact that it is constitutional, as well as looking at Kansas v. Hendricks. The United States Supreme Court decision there even acknowledges that it's not unconstitutional to hold someone in civil commitment if they can't be treated, so long as they meet the subset. The subset there being that they have a mental illness, a sexual illness, or a psychological disorder, and they have the inability to control dangerousness. Let me ask you this. So the best argument I think that opposing counsel has for importing the innocence, actual innocence gateway, is the standard under the gateway, which is no reasonable fact finder. So that arguably, that standard could be applied here. Now, there's other questions that are bound up in that, but that's a good argument that you can import. It's just like the Supreme Court imported it in the death penalty context. That's fair, Your Honor. However, if you're going to import that, then you have to actually acknowledge the Minnesota case law that says that no single factor is determinative. In re of the civil commitment of Ince, which is a decision from about 2014 with the Minnesota Supreme Court, discusses specifically how it's not just a specific number. It's not 80 percent. It's not 25 percent. It's highly likely. And you look at each circumstance and each individual. Here, I disagree with the district court's clarification or qualification of this case as a close case. It wasn't close as to whether or not Mr. Rick should be civilly committed. It was whether there was an alternative place for him to receive treatment that wasn't MSOP. And so if you look at the language that's used in the questioning from the Minnesota case, if you also look at the language that's used calling it a recantation, I disagree. You're not recanting if you admit under oath that your original testimony was true, that your original opinion was true. Things have evolved. That doesn't make it a recantation. And so that's the caution, I think, with opening this actual innocence gateway for something like this. When does it stop? So is part of your argument that the district court didn't do the multifactor analysis and that that in itself is a basis for reversal? Yes, Your Honor. That would be part of the argument. Because if you look at the holding from the district court, and I realize that this is not a fact-finding court and that obviously we're not alleging that there's anything that is so clearly erroneous. I disagree with the findings, but I think that the application of the Minnesota case law is ignored. There isn't consideration for the fact that some of these factors are weighed heavily in certain cases but not in others. For instance, when Rick was civilly committed, he had moderate actuarial scores, but he was still civilly committed. So there's no evidence that just reducing those scores alone would have tipped the balance. He still has not sought treatment. He did not seek treatment when he was in prison, and so now if you were to look at it and consider the qualifications of whether he would qualify to be civilly committed, those are still damaging factors. He has a path out. He just has not sought. On the multi-factor analysis, I wonder if it also applies in a different context because it does differentiate it from the criminal context. You don't, for example, say if an accomplice's liability, or that's not even a good example, in a murder case, well, we're going to do a six-factor test to figure out whether somebody got murdered here. I mean, no, you either murdered somebody or, you know, you killed somebody or you didn't. And I wonder whether that plays a role in making the reasonable, no reasonable fact-finder test pretty clumsy when you have to do a six-part balancing test. I think it absolutely does, Your Honor, because unlike a case where we're talking about actual innocence, such as a typical DNA case where you have an exoneration and it identifies that the individual convicted of the crime could not have committed that crime, that's not what we're looking at. It's whether looking at new data would say that this individual isn't quite as dangerous as he or she was thought to be at the time. And so I think the multi-factors test is another reason why you cannot open this gateway, and no court has done so. Also, it's troubling to me to apply such a standard when the innocence of the underlying convictions, which qualify as an element for a sexual dangerous person, are not being challenged. Mr. Rick pled guilty to all of these. There is a separate case in which there is a challenge and an application to the actual — using the actual innocence standard, but they talk about the fact that even assuming the gateway plies, he still doesn't qualify because he hasn't been — he is guilty of the offense. And I think that would — that logic would still go here in this matter. With regard to this Court's decision in Carstens v. Piper, I think it's extremely helpful to lay out the lengths at which this Court has gone to look at the constitutionality of this statute. And this is something that, despite disagreement from Amicus and from other individuals, it is still constitutional to have this statute. This is an end run around that statute, I think, and I think it's inappropriate when you look at the entire picture of what is in play here. This is a small subset of individuals who have to meet certain criteria, not just a mental illness or a personality disorder. They also have to show that he or she is highly likely to reoffend. The United States Supreme Court in Kansas v. Hendricks talks about the fact that we don't have to have a standard where predictability is certain. And this is one of those instances where it's allowed. So I would submit that this is problematic and should be reversed. Does the State dispute the 6 percent risk factor? I don't dispute the fact that that study states that. I would point out that there were some problems with that study itself. It hasn't been used in other instances, I believe, in that study as well. I think some of the individuals included in the base rate statistics did not have sex offenses as part of their underlying convictions. I think there was also an issue, if you look at the timeline, that's when several individuals were included at a time. So of course the recidivism, one would think, would be lower if the most highly likely individuals are no longer included in that statistic. But even assuming that statistic comes into play with the 6 percent rather than the 25 percent, I don't think it's enough, because it's still a multifactor. You can't just look at that number and say it tips the balance to go a different direction, especially when this is supposed to be an extraordinarily rare situation for this gateway to apply. On the closeness question, one thing speaking from experience that I find very unusual is that Hennepin County is the one who got him civilly committed rather than having the Department of Corrections do it. That indicates to me, and maybe this is not part of the record, the Department of Corrections may have thought this was a really close call and they were giving him the benefit of the doubt. Am I wrong about that? I don't think we can make any reading based on whether or not the Department of Corrections suggested that he be civilly committed.  Unless there are further questions, I'd reserve the rest of my time for rebuttal. Thank you. Thank you, Ms. Long. Mr. Heisler. May it please the Court and Counsel. What the State misses in this argument is this. The Inns case made it very clear that it is a multifactor analysis. But because it's a multifactor analysis, what the Court is required to do in order to have any meaningful review of these cases, the Court is required to determine what key factors were involved in the decision to commit. And every case, every court in this case, starting with the State court to the district court, they all did that job. They all analyzed all the factors. They went through them in excruciating detail, as did the court examiners who looked at this case. And so what happened, the district court, Judge Burke at the State court level, determined the two things that were most important that he relied upon in making the decision that Scott Rick was a sexually dangerous person. Both of those factors are the ones that were undermined by the new evidence. If it were — it's true that there isn't any specific standard. You don't need a specific percentage. But all of these cases, virtually all of them, every commitment case, depends upon the testimony of experts. But isn't that why it's a clumsy fit for actual innocence? I'll tell you, you've got a good point, right? Judge Burke did tell us why he did what he did. But we're going to have cases that where, you know, there's six factors, all six factors. That's actually what the courts are supposed to do, is look at all the six factors, where there might be two going one way and four going the other way. And then we're on habeas, supposed to say, well, Judge Burke or whoever the judge was, well, he would have definitely come out the wrong way or the other way if one of the factors came out differently. I mean, that's tough. But, Your Honor, that's why courts are required to give deference to the decisions that are made at the State court level. It's because there are so many factors. And one of the things that this case pointed out is that there aren't many standards here, if any, that apply to the people who are making these crucial decisions. One of the reasons why this is such a close case is because you had two court-appointed examiners who looked at the evidence, who looked at the new, reliable evidence and said, we would not have made that decision. You just, you, the record in this case establishes that never happens. Another thing that almost never happens, as the county's own expert witness, Dr. Allsdorf, said, when the Department of Corrections and their end-of-confinement review committee makes a recommendation that a person not be committed, their witness, Dr. Allsdorf, said, that's the end of it. And so you have in this case, and that's why the exception should be granted because of the. Well, let me, I'm going to press you one more thing, and this is related to something you just said, which is another reason why it's a clumsy fit is what you're trying to ascertain in a civil commitment proceeding. It is predictive. You're trying to predict what somebody's going to do in the future. And I understand that the percentages have changed. But that's not predicting innocence. With innocence, you're looking at a historical fact, something that happened in the past. Did that person kill another human being? Did they do so with a premeditation intent in a first-degree murder case? But it is really weird to ask the question, was he innocent of being predicted of doing something, you know, sexually deviant in the future? I don't know how, that's like not even a question that normal people ask. And so how do we ascertain innocence in a case like that? Well, Your Honor, even in the criminal context, the issue isn't innocence. It's whether or not the person is guilty beyond a reasonable doubt. Now, that's a subjective determination made by jurors. They're never required to determine innocence. That's not even done at the criminal level. So what you have to do is you have to look at what is the standard here? What do you need to commit? And that standard, unlike almost any other civil context, is that the person has to be, by clear and convincing evidence, highly likely to reoffend. Right. It's predictive. Sure. Sure. By definition, it's predictive. But what's at stake here is liberty. And the Supreme Court has been very careful to say that the Due Process Clause is all about liberty. It's the fundamental protection that's provided to individuals.  Now, you have 25 percent likely to reoffend. There's now 6 percent likely to reoffend. What expert and a judge is probably in a better position to make that determination because these cases are not tried by juries. They're tried to judges. But the judge must make the decision that this person, given the evidence, is highly likely to reoffend. And once that evidence gets undermined significantly, which it was in this case, and there was no challenge to that 6 percent judgment to your question, that wasn't a challenge. None of the actual statistics here were challenged. Well, I don't disagree. But here's the problem I'm having. And, you know, I've been a judge for a long time. And when I hear people talk about actual innocence in the post-conviction context, the reason for that gateway is always, 100 percent of the time, I don't want an innocent man or woman sitting behind bars for a crime they didn't commit. And the test you have is a way to get there. But when you're here, you don't say, well, you know, the chance there's 6 percent versus 25 percent of a prediction of future behavior, I don't want that guy sitting in civil commitment. Yeah, you'd prefer if that wasn't the case. But it's just the interests and what you're trying to get out of it are completely different. And I agree with that, Your Honor. But the question here is, when you look at the nature of this process, because it is predictive, we have to rely on the experts. And so when those same experts who decided he should be committed, looking at the new reliable evidence. Counsel, has your client attempted to use the Minnesota processes that are available to end the civil commitment? Your Honor, he has been in that process. But the problem here is that. What has been done? He has gone through the process through the special review board, which was not completed, mainly because we ended up with his case. Why wouldn't that present an exhaustion problem for this court? Because, Your Honor, that process does not allow for the challenge to the original commitment. When liberty is at stake, one day of confinement is too many. But what's your best case that federal habeas provides, opens the gateway for actual innocence to apply in the civil commitment context? My argument, Your Honor, is that just like in the. . . Well, not your argument. Oh, I'm sorry. Your authority. What do you cite us to that the Supreme Court has given us the responsibility to apply? What authority do you cite to us? Your Honor, there have been a number of cases that have sort of danced around the issue that weren't exactly presented with this issue. But I think the authority is, is that what's at stake is exactly the same, which is the freedom of an individual. And the standards that are applied in the criminal context, those exact same standards can be applied in the civil context to civil commitments. Counsel, your closest authority, I think, was the false testimony line of argument. And our footnote that reserved the question or assumed. . . I'm sorry, it assumed the question, not reserved it. And so that was your closest. And this is not a question of false testimony. Those experts say that was true back then and this is true now. This is a question of double true testimony, right? Can you. . . Yeah, I'll say it again. And it's pretty hokey, but I'm going to say it again. Your best authority was Rhodes v. Smith in your brief. And, of course, that's where we assume for purposes of argument about false testimony claims. Now here, it's not false testimony. It's double true testimony. Your experts say it was true back then and it's true now, right? So it doesn't even fit in, I think, your closest paradigm. I think if you want on everything, you can't win on due process. Just tell me who I'm wrong. It's because, Your Honor, that the evidence has changed. The standard is, even in the criminal context, is there new, reliable evidence that renders the original trial so egregious as to constitute a fundamental miscarriage of justice. So it's the new evidence that gets you there. All of us can say things today that may be true. If we have an open mind, 10 days from now it may not be true. The idea is it's important for the purposes of the liberty of this individual, of every individual, that when new evidence comes to light, if it is substantial, if it is convincing, if it convinces two experts who decided we made a mistake, that never happens. In fact, it's never happened in the history of any of these experts that testified in this case. And so there has to be a way, for liberty's sake, to say we made a mistake here. The same standards can apply. It's going to be tough. It will be very difficult. It's got to be an exceptional case, which this is, clearly. And so that allows that mistake to be corrected. What about mental illness? The standards are almost exactly alike in Minnesota for mental illness or sexually dangerous behavior. So are we going to be doing this? Are we going to have an actual, you're actually innocent of being mentally ill? I'm not sure I understand your question. Well, you have the exact same facts. Somebody comes in and says, hey, mentally ill. You commit the person. And five years later, you come back and say, no, there's new studies. He's not actually mentally ill. The standards no longer apply. And so are we going to have, I mean, under this reasoning, we would have people coming in and claiming, well, the expert testimony was wrong five years ago. There's new studies. And so this guy is actually innocent. He's sitting in there, and he's actually innocent of being mentally ill. No, and I would argue that if that happened, if it turned out that we had people incarcerated, confined, which in Minnesota is for the rest of their lives, if it turned out that that mental illness was determined not to be a mental illness, we got it wrong, absolutely they should be freed. It's not about how many people. It's about whether or not there's a person who's incarcerated, and that's the overriding concern of the Supreme Court is that we need to protect the liberty above finality, above comedy, above all the rest of it. If the person genuinely has committed or has been committed on bad evidence, we have to be able to change that. And it's not going to open any floodgates because you won't see many cases like this, but when you do, since liberty is at stake, it's a due process issue, and that's at the heart of every confinement case. So when the State... One more question. I was going to ask one more question about the actual innocence, which is the Supreme Court has repeatedly said it's narrow. It is really, really narrow, and I just wonder if expanding it to an entirely new context violates their instruction that it's supposed to be a very narrow gateway in criminal cases, and I want to give you a chance because that's the Supreme Court. I want to give you a chance to respond. Sure. And the reason I think that the concept of narrowness works here is because of the duty of the trial court to take all those factors and say, here's what is most important. Here's what got us there. And that's a very narrow range. In fact, when... Counsel, why wouldn't it be appropriate in this case when you mentioned all those factors? Here, it seemed to be one factor. Why... Two factors, I guess. Why shouldn't the district court get a shot at the full multifactor test? Because what the Inns Court said is that you can't have a meaningful review unless you isolate the factors. Which factors among all the factors here, which ones are the ones that got you committed? And to the extent that appellate courts always have an obligation, as they do in this case, to give deference to the factual findings of the trial court. And so if the trial court does its job, as it did in this case, the State court, if they take all the factors, and the record is clear, Judge Brooke considered all these multifactors, everything in his history, came up with two things that were responsible for getting him committed, the very two things under which the evidence in this case has seriously undermined the reliability of that evidence. And so we have somebody sitting who should not have been committed. There has to be a way to address that. It can be done with exactly the same standards that apply in the criminal context. So my point is, the multifactor part of it goes away once the underlying court does its job. So we know exactly what that court relied on. And when that evidence gets undermined, just like in a criminal case, I mean, you may have evidence in a criminal case that suggested guilt. Maybe you have an eyewitness, but there's also blood. There's also the murder weapon. There's also finding the body. There might be a lot of other things that you could rely on in terms of supporting that conviction. Here, it's all the experts. All of these cases are dependent almost exclusively upon expert testimony. So when that testimony gets undermined, then you have a real due process issue, because now you have somebody, based on new reliable evidence, and it has to be new, it has to be reliable, based on that, that shouldn't be there. And again, I would point out the Linhan case says, yeah, we have to consider a bunch of factors, but it doesn't tell any court what weight to give them. That's the court's job. So the court can take 500 factors, narrow it down to two, and that is what keeps a person confined. And so when that evidence itself gets undermined, constitutionally, that person should be free. Thank you. Thank you, Mr. Harris. May I be permitted one more comment? Complete your thoughts. In this case, there was the notion of political bias. The judge mentions it twice. And my point, Your Honor, is that the job of the courts, I think we all acknowledge, is to stand between the individual and the mob. These are not popular people. It's easy to ignore. It's easy to basically toss out a lot of what we normally would think of as guiding principles, because in our hearts, we're keeping somebody confined that should be confined. And so I think if we do that, this exception can be applied, and I would urge the Court to do that for the sake of serving that barrier between the mob and the individual, because the mob wants all these people put away. Thank you. Thank you, Mr. Hensler. Ms. LeJuan, your rebuttal. Thank you. I'm not asking the Court to look to the side and treat these people as less than other individuals. That's not what I'm asking. I'm asking the Court to apply the principles that the Minnesota Supreme Court, the United States Supreme Court, and this Court have applied in saying that this is constitutional. If you look at Carstens v. Piper, the due process discussion is discussed explicitly. On 845 Federal 3rd 394 Pennsite 409, it's quoting Minnesota's statute or Minnesota case law Blodgett, which is a case from 95. Once a person is committed, his or her due process rights are protected through procedural safeguards that include periodic review and reevaluation, the opportunity to petition for transfer to an open hospital, the opportunity to petition for full  There is still a due process in play here. Additionally, the United States Supreme Court in rejecting a constitutional challenge to the Kansas statute in Kansas v. Hendricks says, as we have explained regarding congressional enactments, when a legislature undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad, and courts should be cautious not to rewrite legislation. Suppose that the State put in perjured testimony. I know that's not this case, but perjured testimony comes in. A guy is civilly committed. You later have not only a recantation, but you have the expert witness on one side saying, yeah, I absolutely perjured myself. I made up the evidence. No independent constitutional violation? I think there might be, then, if there is false evidence. I'd be remiss not to say that that would be a constitutional violation. I think that if there were perjured testimony, perhaps that is the exception. I don't think this is the case where that applies. I also think that if there were perjured testimony, perhaps the Court then reopens it. Rather than just immediately ordering release, maybe you take that testimony out and you start over. Similar in habeas cases, if a conviction is overturned on habeas relief, my understanding is not that you just get out and you don't start and you can't retry it. The government, the State, gets a chance to redo. I found that odd, actually, in the district court's opinion. I thought if the district court was going to find a habeas violation, that you say it's up, then, to the county whether or not they want to essentially retry this and start over. But instead, I think it was you get to go free. Any explanation for that? I agree. I also found it odd. And it was problematic here because while this case was pending and there was a say, Mr. Rick was released for a day before anything was settled. And so you, at a minimum, a release plan needs to be put in place if it's sent back. If this Court were to affirm, we would ask that you do that at a minimum. If this Court were to reverse. What would be the legal authority for this Court to have any involvement in that? And what would be the Federal jurisdictional basis for a release plan? That's a fair point, Your Honor. I think the basis would be that it would be remanding to follow consistent with his opinion. And with the opinion being that you don't just start over. You do start over. I can't explain myself here. You basically would go back to the beginning and send it to the district court or utilize the process from the legislature and the fact that there are specialists who look at this. I just don't think that it's the right answer if habeas relief is granted to not state gets an option to consider or whether or not to petition. It is possible that if it went back on remand, that would be the answer. But I can't speak to that unless it's sent back appropriately. I do think, too, that it's important to note, with Judge Schrost, with your question with regard to what if a mental illness is challenged later. Here, Mr. Rick is not challenging the underlying diagnosis. He's not challenging that he's been diagnosed as a pedophile or that he would qualify. It's highly likely that he is trying to undercut. And so I think that is where it's extremely tricky. If someone was challenging a diagnosis that changes, perhaps then we're in a different situation. But that's... That would suggest the actual innocence gateway should have a place. I mean, no? I don't think it would at that point because if you would be able to go through the special review board and you could call in witnesses to testify when the individual was committed, this was thought to be a mental illness. This is no longer considered that. And so this individual doesn't need the treatment. The statute that talks about what has to be looked at talks about whether there is still a need for treatment, whether it needs to be in that secure setting, things of that nature. So I think even though it wouldn't challenge the underlying commitment, I think you could still address it at the special review board hearing and at a commitment appeal panel where you can call witnesses and you can put on evidence. Well, and that way it's different from the criminal context as well because you get not a periodic review, but you can petition, you know, on a periodic basis. I guess the closest analogy would be parole or supervised release where at some point in time you get a review and you have to wait a certain amount of time before you get that, whereas this is sort of periodic and makes it a little different. Correct. But there's nothing preventing him from seeking that periodic review. And I see that my time is about to expire. We would respectfully ask that you would reverse the district court. Chief, if I may, you mentioned this Carstens case several times. Yes. Is it in your brief? It should be. How do you spell it for starters? It's K. And I might be butchering the name. Carstens is K-A-R-S-J-E-N-S versus Piper. That's the 2017 decision by this Court. The site is 845 Federal 3rd, 394. It's Carstens 1. It's not in your index. That's the reason I was confused. Okay. I apologize for that. For sure it should be in the reply brief then, so. I don't think it was there either. Oh. That's an oversight on our part. I apologize. Thank you. At least not in the index. Thank you, Ms. Lowen. Thank you also, Mr. Heisler. The Court appreciates both counsels' vigorous argument before the Court this morning. We'll continue to study the briefing materials and render a decision as prompt as we can.